The next case on today's docket, United States v. Coleman, is being submitted on the briefs and so we will move to case number 8, Goodloe v. Sood, and we'll hear from Mr. Stander. Good morning, your honors. May it please the court. A jury in this case could find more than medical malpractice, it could find deliberate indifference. Perhaps the starkest evidence is that Dr. Sood and Fisher denied their own referral to a specialist. They then decided to re-continue with ineffective condyloma treatments that did nothing but add additional pain. This caused an additional two months of delay in getting Goodloe the surgery that he needed. So would you concede that you don't really, I mean up to the point where doctors Goodloe and Fisher, I think that's in June, decide that they will, they have this collegial review that we've heard about many times, that they will get the outside consultant. And instead of what they expected, which was an evaluation, they got this proposal for immediate laser surgery. So that's the moment where they say, oh well, let's just go back to the same stuff we've been doing before. Is there any time before that that you think you could show deliberate indifference? Absolutely, Your Honor. I think a jury could well wonder about Dr. Sood's inexplicable insistence on treating condyloma in the first place. I'd like to point specifically at paragraph 8 of the Fisher declaration. This is at appendix page 127. That is the first collegial review. It's at the beginning of March 2014. The first collegial review between Sood and Fisher. And here's what Fisher says, quote, according to Dr. Sood, the patient has refused topical medications and was requesting a surgical consultation to remove the warts. Close quote. That is not at all what Goodloe was saying. That's the opposite of what Goodloe was saying repeatedly. Starting in at least January and February, Goodloe was saying he did not want treatment for the condyloma, that he'd had the condition for 18 years, it had never caused him any symptoms. He said instead he needed treatment for his new symptoms, which he described as excruciating stabbing pain for hours each day along with bleeding. Condyloma do not cause those symptoms. Dr. Sood and Fisher don't even argue in their brief that condyloma do cause those symptoms. According to the medical textbook on page 83 of the appendix, condyloma don't cause those symptoms. What about the hemorrhoids? When he shows up at the new prison, he also has apparently internal and maybe external hemorrhoids. That's correct, Your Honor. Two points on that. First of all, the hemorrhoids— That could cause bleeding, it seems to me. First of all, the hemorrhoid treatments were not working, and that went on for months and months. Goodloe told Dr. Sood that they weren't working. Second, starting in the January 16th appointment, the treatment from Sood was never about hemorrhoids. It was all about condyloma, almost exclusively. All of the collegial reviews that he held with Dr. Fisher were exclusively about condyloma. He told Goodloe at an appointment in March 2014 that he could not see a specialist until he endured six weeks of condyloma treatment. He didn't say six weeks of hemorrhoid suppository. He said condyloma treatment. When he referred Goodloe to a specialist in June, the referral was for condyloma treatment. That's why the specialist scheduled a laser cauterization, which, of course, was promptly denied by those same doctors. So the jury could infer from all of this that Dr. Sood and Fisher were simply ignoring what Goodloe was telling them. So your best evidence of what Goodloe was telling them—obviously, Goodloe is probably not able to say, you know, I think I might have a Fisher. But he is, I guess we see in the grievances, and I'm not sure where else we see it. You can tell me. But he is certainly describing the symptoms he's feeling, the internal pain and the pain after he moves his bowels and so on. And that wouldn't be consistent with what the warts would cause. That's correct. There's just a huge mismatch between the symptoms that Goodloe was describing and between the symptoms that condyloma caused. And again, we point that out in our opening brief. And the doctors, they don't respond to this. They don't say, oh, yes, it could. They also don't argue that— They weren't giving him the suppositories, right? And wasn't he not using them? He was using them. So I think— I thought he abandoned it at some point because he said it wasn't working. So I think a jury could conclude otherwise. A jury could conclude that he never refused the suppository. What happened is this. Nurse Bloomfield prescribed a suppository in November of 2013. She also prescribed a suppository in March of 2014. So that entire time, he had a prescribed suppository that he was taking from Bloomfield. So when he went to the appointment in February with Dr. Sood, what apparently happened was he said, I don't need the suppository. Why? Because I already have it. I'm already using it from Bloomfield, and it doesn't work. And Sood's response to that was, well, let's go treat condyloma for the next eight months and insist on condyloma treatments before you go to the doctor. Sood didn't insist on hemorrhoid treatments before he went to the doctor. It was all about condyloma. So the suppositories were focused on the hemorrhoids, right? Correct. They wouldn't cure a fissure. So Dr. Sood argues that it would treat a fissure. He doesn't argue that it would cure one. But he was using it, and it wasn't happening. So you put this in the group of cases of persisting in a particular type of treatment that is unresponsive to or that is not inducing any response to the problem. Correct. Greeno against Daley in that line. That's correct. So I think in this case, it's really an example of there's multiple. So the court said in Pettis v. Carter, there's a few different ways to infer deliberate indifference. I think there's several of those ways that are overlapping here. I think there's treatment that's blatantly inappropriate for the symptoms. I think there's persistence with an ineffective course of treatment. I think there's unexplained delays, and they're all overlapping. And what it boils down to is that there's some very strange treatment decisions, some unexplained treatment decisions that would allow a jury to infer deliberate indifference. Mr. Stander, let me just ask you a question to perhaps clarify the record or just make sure what's in front of us and what's not. The district court, as you know, attributed the delay to what was characterized as an administrative error. And in your reply brief, you say, look, that's really not an issue anymore. It's not before anybody. My question is this. Is there anything in the record anywhere to support the notion that the reason for the delay between that June 2014 and September 2014 time period was because of some kind of administrative snafu? So the declaration of Natalie Williams, she is the staff assistant who scheduled the appointment. There's a line in her declaration, a page or two, that says, apparently no one noticed that the appointment was denied, that the laser cauterization appointment was denied, and so no one rescheduled the next appointment. She says that in her declaration, that she chalked it up to an administrative error. That's the same argument that the doctors made in their motion for summary judgment. They now have abandoned that argument. They now say on appeal that's not what happened. What really happened is they made a decision on July 1st, and they admit this in their brief. We made a decision on July 1st to resume two months of condylometry. Quote, quote, conservative, close quote. What they call conservative treatment. Yeah, I don't see the evidence of an administrative error anywhere. I think what Judge Wood said seems to be the better reading of the record, that the doctors just decided after he got this surgical consult, no, no, no, we're not talking about surgery. That's premature. Let's stay the course for another couple of months and see what happens. That seems exactly correct, and it's also what they argue in their brief. And your point is that they say that in some contradiction to what they said when they decided to obtain the outside specialist back in June. So they give two reasons for this decision to resume the conservative treatment. One, they say that he'd never had an evaluation yet. The whole time, all that Lowe was asking for was an evaluation. So to resume two months of ineffective treatment instead of sending for an immediate evaluation makes no sense. The other reason they give is that he needed conservative treatment first. They'd already given him conservative treatment for months with no effect and made the decision to send him to the specialist. Neither explanation makes any sense. And a jury could conclude that you chalk it up to some sort of administrative error or some decision, treatment decision, but a jury could also conclude otherwise and conclude that it was just based on deliberate indifference. Okay. And I'll reserve the rest of my time for rebuttal. Okay. Very good. Mr. Hulting. Good morning, Your Honors.  I'd like to clear up two things quickly on opposing counsel's argument. First, the laser cauterization surgery, one, this was denied, as Your Honor pointed out. Because this was premature, there was no evaluation. And two, laser cauterization would not have healed or cured any anal fissure that existed if one did exist. But that's right. They're not paying any attention to the question, to the broader question. We need to figure out what's going on. You know, is this internal pain somehow because of external or internal growths or is it because of something else? I mean, it's a more open end. When you go to a specialist, sometimes it's because you, the generalist, can't diagnose this effectively. And before cauterization, presumably the specialist would have done an examination. And on examination, the fissure could have been detected. Possibly. However, Your Honor, the – Oh, almost certainly. I can't imagine a specialist would just sort of zap in there with a laser without looking. I mean, I hope. I agree with that. Two points on that. One, that is what was requested by the outside specialist was the surgery without the evaluation. Because that's what he heard from Dr. Good – we're back around to the original problem. That's what he heard from Goodloe and Fisher. And so the specialist might have thought, well, you've already told me, but I – Yeah, but before he starts with the laser – Before he starts with the laser, he's going to look at the situation. I don't know of a single medical specialist who wouldn't do that. No, I completely understand, Your Honor. I would say, too, there is no evidence that an anal fissure existed prior to September 22, 2014. Well, you make that argument, although the reply brief, I think, does a pretty good job of challenging it. There certainly is evidence, and this is all a layperson can do, of untreated conditions that would be consistent with the fissure and are certainly not consistent with the condyloma. Two points on that. One, they were still treating him for the internal hemorrhoids. He was still prescribed the Dibucaine topical ointment. And two, during – on December 19, 2013 – But you're ruling out – you don't think that there's any possibility that this man could have been living with a fissure. I mean, that's like a cut in a very sensitive part of the skin. Yes, Your Honor. There are three instances prior to September 22, 2014 where either a visual or digital rectal examination was performed on Mr. Goodloe. On December 19, 2013, which was a visible examination – So the non-specialists don't find it. We know that. This was not noted on palpitation either on March 18, 2014 or August 14, 2014. But again, that just might mean that it took a specialist to detect it, which is not uncommon. And I would say if the argument that is to be made is that there was an error in diagnosis, that does not constitute an Eighth Amendment claim. No, the argument – and that's where, in my own mind, the story begins in June, basically. They're trying various treatments. You've got to give them some time to do that. That time comes and goes, and even they sit down in June and say, This isn't working. We need to bring in supplementary troops somehow. But they don't – when that falls apart, when they realize, Hey, we want a consult, and you're ready to go perform surgery, they don't follow up. They consciously decide, Oh, let's go back to what didn't work, or so a jury could see it. Well, Your Honor, the TCAA treatment that he was receiving, as is noted in Dr. Fisher's affidavit, an appropriate course of TCAA treatment is 10 to 12 weeks. When the treatment began – That's not what he wanted, though. I mean, it wasn't working. I mean, this is like pouring acid. None of us wants to have a big cut and pour a bunch of acid. That's what TCAA is. It's trichloroacetic acid. Besides which, if they had decided, even if they were focused on the condyloma, if they had decided in June when they had this collegial meeting that he should be sent to an outside specialist because it wasn't working, I just don't understand why then suddenly the TCAA is back on the table. Well, two things. One, the records do show, and Dr. Seuss noted contemporaneously, that he's noted the conditions were resolving. However, they sent him out because on June 9, 2014, Mr. Goodloe made an additional complaint of pain with bowel movements. But there was evidence that these— But he's complaining of that for the whole time. Maybe they decided to listen to him, but it's— I don't see in the record when they say, Oh, let's go back to the conservative treatment, any explanation for why, even though it had never worked before, to address those very pains with bowel movements, all of a sudden they think it's going to. Can I add one thing to that? Yes. The problem that I have is I completely agree with Judge Wood's read of the record. And then what I see is if you start on May 28 and you march forward, I've counted five separate incidents in the treatment notes where he is explicitly complaining of pain, five separate times. And so you have these complaints that are coming in while they're continuing to treat the wards, and he's not at any point there. They don't just say, Let's get him out to the consult. That's what we decided originally to do. And so I don't know what more he needs to show to create an issue of fact for a jury. Well, a couple of points on that, Your Honor. One, again, if this pain was caused by an anal fissure, which again, there is no evidence in the record that an anal fissure existed prior to this date. No, but there's all kinds of symptoms that something's going on that they haven't yet gotten to the bottom of. Well, that's right, which I'm going to call circumstantial evidence. I think you're overstating your case when you say there's no evidence, whatever. It's not like he was happily off playing basketball and all of a sudden decided in June that he wanted to consult with a colorectal specialist who would want that. So, yeah, there's plenty of circumstantial evidence. Very fair, Your Honor. However, he was offered the anusol or anusol suppository by a nurse practitioner at Bloomfield. This was for his internal hemorrhoids, which was believed to be causing the internal pain. The nurse practitioner at Bloomfield also noted that if he were to have taken the suppository, this suppository would have cured any anal fissure if it existed. But she's wrong. I mean, because he was using, you know, taking the facts in the light most favorable to him. You're free to contest them later on, but taking the facts in that light, he was using them and they weren't working. He began refusing them, Your Honor, beginning on February 24, 2014 when he was offered the suppository by Dr. Soot. He refused the suppository. But we have an alternative explanation from Mr. Stander, which is that he already had them from Nurse Bloomfield. His explanation he provided, Mr. Goodloe's explanation he provided was that he didn't think he needed it. And that's what his medical records are littered with, is instances where the treaters are attempting to provide treatment to Mr. Goodloe, and he tells them, no, I know my body and I don't need that. I don't need suppository. Now, I don't read it. Any evidence in the record that the condyloma can cause the bleeding and pain that he was suffering from what we later discovered was an anal fissure? I believe there's evidence that the internal condyloma could cause pain during bowel movements, but the internal hemorrhoids as well could cause that. And as I mentioned, there was treatment. What evidence are you pointing to? That they were treating the internal hemorrhoids. No, what evidence are you pointing to to answer Judge Barrett's question to show that the conditions they thought he had could produce the symptoms he was reporting? In the affidavits from both, or the statements from both Dr. Fisher and Dr. Soot, I believe they mentioned that internal hemorrhoids could cause pain with defecation. But I asked about condyloma. Could condyloma cause pain with defecation? I'm not aware of that. Or bleeding. I'm not aware of that, Your Honor. On July 29th, this is a real problem. On July 29th, he basically writes a note or a grievance or something, and it says, hey, you're not getting it. My issues are internal, not external. And that comes at a point in time that they had already decided that he needed that external evaluation, and it doesn't happen until September 22nd. His whole point is, do what you need to do with the warts, but that's not what I'm complaining about. I'm complaining about something altogether different than the warts. And he's got these really express notes after there's already been a decision that he needs an external consult. Yes. And I would say, one, I think it mischaracterizes to say that he said, do whatever you want with the warts. He refused treatment on a number of occasions for the warts. Because he doesn't care about the warts. That's the whole problem. He's had the warts for 18 years, he says. Yes, Your Honor. I see my time is about to expire. Just about up. If you'd like to sum up, that would be fine. Would you like me to address any of the other issues, Dr. Fisher or the retaliation claim? I see no questions, so we will take that on the briefs. Okay. For these reasons, the record shows that Dr. Sue did not doggedly persist in one course of treatment. The record shows that there was no evidence of an anal fissure prior to September 22nd, 2014. And even if an anal fissure did exist, this claim would properly sound in medical malpractice, not as an Eighth Amendment deliberate indifference claim. For that reason, we ask that you affirm the district court's grant of summary judgment in favor of Dr. Sue and Dr. Fisher. Thank you. All right. Thank you. Anything further, Mr. Stander? I don't know. Did he run out of time? I'll give you a minute. Just very quickly, I think it's clear that there is an issue of fact starting at least in July of 2014, but I think it also goes back to January 16th. The January 16th appointment of 2014 is where Dr. Sue just starts ignoring what Goodloe is telling him about his symptoms, and that's when he makes the decision to start persisting with condyloma treatment. Goodloe files grievances that say essentially the same thing as his July grievance back on February 20th and March 15th. Also, the paragraph 8 of the Fisher Declaration is from the beginning of March, where Sue is telling him things that are just not true, according to what Goodloe says in his declaration and the contemporaneous grievances. But also just close and say there's an issue of fact as to whether Sue ever offered a digital examination until August of 2014, which is a year after the treatment began. And so for all of these reasons, I think a jury could infer deliberate indifference. Thank you. All right. Thank you very much, and we appreciate your accepting the appointment from the court. Thank you. Thank you. Thanks as well to Mr. Holting. We'll take the case under advisement.